My name is Bill Green and I represent Jeff Renfro on this appeal. I'd like to, if I could, please reserve five minutes of my time. Okay. If you'll watch the clock, I'll also try to help you watch. I'll try to. Thank you. What we have, I've been practicing law in this area for quite a few years, and what we have here is a very rare situation. There's a reason why there are, there's only one district court in the country that's dealt with this issue and no appellate courts that I've been able to find that have dealt with this issue. And the reason is simple. Most of the time, in fact, 99.9% of the time, you have one policy in effect and the language we're talking about here is perfectly clear. You get to deduct the Social Security from the amount of the benefit. Nobody disputes that. This, as I said, is an oddball situation where we have two policies that are in effect at the same time and we have to figure out how we apply that offset. When I first came to this situation, I approached Unum and said, look, we've got these two policies. What are you guys going to do? Very simple answer was, we're going to take it from one. We don't know which one. There's a possibility we'll take an offset, a pro-rata offset from both, but that's what we're going to do. And that's what happened. For 19 months, everybody was happy chugging along on their merry way. It was only when Mr. Renfro came and asked for a policy buyout that things changed. And all of a sudden, this clear understanding and agreement that had been reached with respect to how the offsets were going to work fell apart. And Unum took the position all of a sudden that they were going to take the entire amount of the offset from both policies. As I said, I haven't been able to find any case that deals with this, but recently I got involved in another insurance matter and came across some cases that deal with the issue under a general liability policy where you've got what's called an other insurance clause. And the other insurance clauses typically say, if there's other collectible insurance, we, our policy is excess. So obviously, if you have four or five insurance policies, everybody's going to say, hey, I'm excess, I'm not the one on the hook. What did courts do to fashion a remedy for that? They looked at all of them and they said, you're going to participate on a pro rata basis. We're going to look at the amount of your indemnity limits, and we're going to look at the amount of the loss, and everybody's going to participate pro rata. That's what's happening here. That's what makes sense here. Kagan. Can I ask you if, let's assume there was, UNUM wasn't the joined force, and there was policy A and policy B over here, and each one says you can deduct Social Security. Would there be any problem with that? There still would be a problem with it, because they would have to look at the, there would be no problem as long as they did it the way we're saying it needs to happen, and that is on a pro rata basis. But each one could not take the whole amount, because each one's policy says you can only deduct what the person receives. Once one policy were to deduct it, there isn't anything that's been received anymore, which is the argument we made before the district court is, once you've taken that $1,730. What does the, what does this language say, the precise language? It seems to me that it. It says received or is entitled to receive. And the reason why they have the entitled to receive part is because some people won't actually apply for Social Security, so if UDEM determines that, hey, you could have applied and would have gotten benefits, then they're allowed to deduct it, or any carrier is. So it is a situation where we have to look to the equitable result and the reasonable result. And the best evidence of that is how they interpreted their own policy, and what their own internal documents say about it. They kept saying it would be unreasonable to do this, and then all of a sudden, without any real explanation, reversed that course. And counsel, I want to follow up on Judge McKeon's question, at least as I understood it. Let's assume for a moment that we have the same policies that we have here, but instead of UDEM being the administrator for both plans, let's assume that there's company B and company C. So one is UDEM, one's somebody else. Is there any question in your mind that both plan administrators would be able to take to deduct the full amount of the Social Security income, notwithstanding the fact that there would be the problem that you're talking about here? I have no question but that they would, and then it would be up to the policy holder, the plan participant in both cases, to file some sort of action and say it's not fair for you both to take. And I get you. I understand you're talking about the equitable part there, but there's absolutely nothing in the plan that talks about that, is there? No, there isn't. There isn't. Here's what the plan says. Here's what's deductible, the amount you or your spouse or your children receive or entirely receive as disability because of your disability under United States Social Security. So plan A, it reads that. That's right. I owe you X dollars minus these deductibles. And so it says the amount of Social Security that you receive. And then over here, the plan says the same thing. I owe you X minus the amount that you receive. So I'm having some trouble understanding how the plain language of the plan could get kind of transmuted into your theory. I know on an equitable basis it makes total sense, but the contracts don't say that. Okay. Here's the contracts don't say it because they never anticipated this kind of a situation happening, because as I said, it almost never happens, okay? And it would have been so easy if the intent was to be able to deduct the whole amount, regardless of whether somebody else out there is trying to deduct that whole amount. It would have been simple to say, we get to deduct it no matter what. Even if you're covered by multiple policies, we get to deduct the whole thing. That way, the policyholder is on notice and the language is clear that you can deduct the whole thing, even though it might mean that there's a double dip, that there's a double dip. But it doesn't need to say that because it says you can deduct it, period. So in other words, in a way, your language would be superfluous because it says right here, I can deduct it, at least according to the plan. So your language would be potentially more clarifying, but it wouldn't add anything to what the language already says, would it? It wouldn't, but one of the things you really have to look at is how they treated it. Look at how Unum itself treated it and what they believed this language really meant when there were this oddball situation. I thought they were kind of trailing the payments while they figured all this out. Not at all. They weren't trailing anything. This was 19 months that this happened. Nothing happened for 19 months. But they told them, didn't they say? They said we're evaluating it ongoing, but for 19 months? They were evaluating this issue? There's no way they were evaluating it. That didn't hurt your client in the meantime, did it? It didn't hurt my client in the meantime. As a matter of fact, when they ultimately decided to do it, they didn't go back and recover what they'd overpaid pursuant to their understanding of the policy, did they? They did not. Okay. So here's my problem. I hope you can help me with it. As I see it, you've got this Unum company. It's unusual because you've got the same company administering it. And you've got case law. You've got Eisner, which tells a lot. But you also have Metropolitan, which is, of course, a Supreme Court case that talks about these kinds of cases and whether or not there is conflict of interest. So you've got a policy that's very clear on its face, as Judge McEwen just pointed out. And as you frankly agreed, but there's nothing in there that talks about this circumstance. As I understand it, if there were two different administrators, there'd be no problem here, unless they decided they wanted to do something different. But under Metropolitan, what we really have to look at is whether there was bias, there was conflict of interest, and whether Unum was a heavy-handed, you know, terrible insurance company that just treated your client just awful. Correct me if I'm wrong, but what I understood from the record is that, in fact, Unum kind of was kind of nice. You know, they kind of said, look, we're looking at this right now, but we're going to pay this to you in the meantime, as if this didn't happen. And there was some other thing on a medical record, and they took care of that. And ultimately, when they changed their mind, they didn't say, hey, you know, we warned you about this, we're going to come and get the difference. They let it go. As I look at it, under Metropolitan, what we as an appellate panel have to look at is, was the conflict of interest, in effect, balanced against the conduct of Unum, in this case, was the conflict offset by virtue of the fact that Unum proceeded in a fairly equitable fashion. Isn't that really what we're wrestling with here? Well, you're absolutely right. One of the issues is the standard of review and what level of skepticism you're going to look at in terms of what the administrator did. And you're right, they didn't go after the back benefit, but they didn't do that in the first instance when they first decided the case either. When they first came forward and said, we're going to pay you this back benefit on the service master claim, they didn't say, and by the way, we're going to deduct from that, where there was plenty of money to do it, this double offset. So they said they were going to look into the issue, didn't they? They said they were going to explore it. Not with respect to the back benefit. Going forward, they said they were going to look at the issue and explore it. Okay. See, so now we have 19 months. We get, I think, four or five letters from them saying, not mentioning it a bit. In the entire record, there's not a single discussion in that 19 months. Not one claims committee review. Not one person sending an email to another saying, hey, what did you finally decide about this? And your client wasn't prejudiced a bit, because he got every nickel that he thought he was entitled to, right? During that 19-month period. During that 19-month period, he did. Absolutely. He wasn't prejudiced. He was not. But in terms of the issue of how much deference to give, what you have to look at is to see, are the decisions that the insurance company is making, are they, as you said, heavy-handed, but in my view, not heavy-handed. Are they inconsistent? And how do you find out how to That's not the standard, is it? Well, inconsistency of decisions, of the decisions the insurance company makes, is one of the factors that can be looked at in terms of whether there is the level of skepticism that should be or deference. You're down to just under four minutes. I didn't know if you wanted to save your remaining time. Let me ask you one quick question. You're not conceding that it would necessarily be a different result if there were two totally independent policies with two independent administrators, right? Not at all. Not at all. I think it would be the exact same result. You might have to get there through a slightly different means, but it would have to be the exact same result. Okay. I'll reserve my remaining three minutes, 16 seconds. Thank you. Yes. Good morning, Your Honors. Kevin Gill for Defendant's Funky Door Long-Term Disability Plan and Servicemaster Long-Term Disability Plan. The question here really comes down to whether each employer, each plan, has the right to enforce its contract with Mr. Renfro, or whether one plan doesn't get to enforce its contract because Mr. Renfro happened to have a separate, completely unrelated contract with another company. Well, there's no question. A little more complicated than that in terms of the meaning of the phrase entitled or receiving the benefits, is it your position that once one plan deducts the amount, that he is still receiving that benefit? Yes, Your Honor. He is still receiving. How could he still be receiving it if it's already been deducted from another plan? Well, in the abstract, he's still receiving it. The fact that one plan considers that a deduction doesn't mean that he didn't receive it. The question is really whether the fact that he received it means something different because another plan also has a thing that, you know, it's deducted for if he receives it. So I don't think there's any dispute that he's actually receiving Social Security Disability. The only question is whether he's receiving it for purposes of the plan because he's also receiving it for the purposes of the other plan. Which, if you say he's receiving it for one and not for the other, you've got a problem where the same exact language means two completely different things in the different plans. Yeah, if you treat it differently, in effect, you're construing the identical contract one way for one company and one way for another company if you assume, say, a company B and a company C as opposed to having Unum in the same situation. Is that correct? Exactly right. And is there anything in the policy that would permit Unum or any other plan administrator to obtain information from another company who happened to be administering another policy about what they were doing vis-a-vis their policy? No, Your Honor. Not that I have seen. And in fact, you know, each plan has information on what are not deductible sources of income. And individual disability income plans are not deductible sources of income. So we can't say, well, he's getting, you know, this disability benefit from the other plan, so we're going to deduct that. He really doesn't get anything. Okay. Now, in an insurance setting, insurance companies do underwriting, don't they? Yes, Your Honor. They evaluate how much a plan should cost and what the people are going to get and all that sort of thing, right? Yes, Your Honor. And in this case, the plan that Mr. Renfro had, there was a separate underwriting, I assume, for each policy, right? Yes, Your Honor. And each policy would presumably have factored in a Social Security benefit, right? Yes, Your Honor. So if Mr. Renfro is successful in his lawsuit, in fact, he's gotten a windfall and Unum has basically taken a hit. Is that a fair assumption? Yes, Your Honor. That's a fair assumption. Okay. The premium was paid based on the Social Security disability offset. Going the other way with one plan creates confusion. It creates inconsistency and it creates complexity, which is all contrary to what the purposes of ERISA are, at least under Concrete. The purpose of these plans is to, they calculate a disability based on income and other factors, correct? Yes, Your Honor. And then he may have been in a situation where he would only be covered by one plan. It's a little more unusual to have somebody covered by two plans. Correct, Your Honor. So it's just kind of an odd thing where intuitively it seems unfair, and yet he's actually covered by two plans, so he's getting, as he should because the contract is there, he's getting disability from each plan, correct? Yes, Your Honor. He's getting disability from each plan and neither plan is saying, oh, you're getting disability from that other plan, so we're going to deduct that. Right. So they're not deducting the fact that he's getting, and I don't want to say double disability because you never get in disability what you need, I'm sure you would agree. It never adds up to 100%, but he does have two separate plans that he's getting it under. So then the question becomes, is there anything unusual about this case because it is a single plan administrator? I don't see why, Your Honor. I mean, UNAM didn't decide to be the plan administrator for these two plans based on, you know. Well, is the fact that there's a fiduciary responsibility on the part of UNAM towards Mr. Renfro? Well, there's a fiduciary responsibility on the part of UNAM towards the plan beneficiaries as a whole, and Mr. Renfro being a plan beneficiary, there's also that. But the problem with focusing on a fiduciary responsibility just to Mr. Renfro means that you're avoiding your fiduciary responsibility to the other plan beneficiaries because this confusion, this inconsistency is likely to raise their premium. That's just the issue that Metropolitan treats, isn't it? Whether there's a bias that's shown, I called it heavy-handed before when I talked to your colleague. In this particular instance, can you elucidate what you think UNAM did to, perhaps without thinking that's what they were doing, to overcome the conflict of interest and bias concerns expressed in Metropolitan? What did they do that showed their good faith, that showed their working with Mr. Renfro from your perspective? Well, they've done a few things, Your Honor. They have, you know, first of all, UNAM is cognizant that, you know, in the past they've sort of developed a bad reputation. They've been trying hard to, you know, to correct that. They here, both initial letters, told Mr. Renfro that Social Security and other things were deductible sources of income. So they let him know up front, you know, what was deductible, what wasn't. And that's one thing I wanted to just be sure. Your opposing counsel intimated, at least, that this was a big surprise, came up later on. And my review of the record suggested that, in fact, the issue of whether Social Security was deductible in both policies was disclosed ab initio. Is that correct? Yes, Your Honor. It was disclosed at the beginning.  under the Funky Door Plan was that it was going to be very temporary. He wasn't going to have, you know, he wasn't going to be disabled long enough to apply for Social Security. So they said, you know, this is deductible, but we're not going to deduct it right now because we don't think that you're going to be disabled that long. A year later, when he applied for disability under the Service Master Plan, he was also applying for Social Security disability benefits. And then UNAM said, in regards to the Service Master Plan, it looks like you're going to be getting Social Security. So we're going to deduct that. So they did deduct it for a while. And then Mr. Renfro, his Social Security was denied. And at the same time, UNAM decided, well, it looks like he's no longer totally disabled under the Service Master Plan, and so they cut off his benefits. Mr. Renfro appealed both, and he prevailed on both. Both Social Security reversed their denial, and UNAM reversed its denial. That's the new medical information, and they changed their mind, right? Yes, Your Honor. Did that show heavy-handedness on the part of UNAM, or does it show a certain amount of open-mindedness, if you will? I think it shows, Your Honor, it certainly doesn't show heavy-handedness. It shows an ongoing, you know, desire to make sure that if Mr. Renfro is entitled to benefits, he's getting them. If he's not entitled to benefits, he's not. But there's no push to deny him benefits. Quite the opposite, there's this ongoing effort to try to work with him. And then, once the Social Security benefits were approved, you know, he got a lump-sum payment for going back on Social Security. And UNAM said, well, you know, we overpaid you on the Funky Door Plan, so we'd like that back. But, you know, another part of UNAM said, but the Service Master Plan, you know, we owe you this much money. And Mr. they said, you know, we want you to pay this Funky Door Plan back. For five, six months, he didn't pay it back. So then, finally, in consultation with Mr. Renfro's counsel, you know, UNAM said, well, we'll just take some of the money from the Service Master payback and reimburse the other plan. That was okay. I mean, there was no objection voiced then. So UNAM thought that it was working with Mr. Renfro and Mr. Renfro's counsel. And it's easy for him to make sure that he doesn't, you know, he's not under this obligation to pay this one thing. He doesn't have to face a lawsuit for, you know, recovery. They're trying hard to work with him there. And then, you know, they were paying both benefits, and then they, you know, Mr. Renfro contacted them and asked, oh, I should go back and say, when they did say this about the Social Security, importantly, they said, we're only going to take the Social Security from one. We're not going to take it from both, which I think was kind of them. So he still got a pretty good chunk of change coming back to him, you know, once his, you know, once they reinstated his plan. Your opposing counsel spoke briefly about equitable concepts. And those come up occasionally, but it's extremely rare for them to come up when a contract is unambiguous. Isn't that correct? Yes, Your Honor. It is extremely rare. And the equities and the way the contracts work, sometimes their result can be a little harsh, you know, compared to what would normally happen. And I can understand why Mr. Renfro and his counsel would see this as harsh, but the reality is he's getting disability benefits from three sources, from, you know, Service Master Plan, the Funky Door Plan, and Social Security. What happened here is essentially what happened in the district court case in the Eastern District of Michigan, right, the Eisner case? Yes, Your Honor. And that court, I gather, concluded that we don't have power, courts don't have power to redraft insurance contracts to deal with these kinds of issues, in effect. Is that correct? That's correct, Your Honor. And Unum was, a Unum plan was one of the two plans at issue there, too. So that court was construing nearly identical language to the language in both the plans here. So basically, even though counsel for Mr. Renfro appears to be a really nice guy, and I'm sure an extremely able lawyer, we can't let the warm fuzzies control the outcome in this case. Is that your position? That is correct, Your Honor. Okay. I take, I'm looking at these plans. One, we don't have somebody in this income situation, but one is a maximum of $10,000 a month, and one is a maximum of $3,000, correct? Correct, Your Honor. So in effect, they're saying you could get disability of up to $13,000 a month if you could max out based on your income. Correct, Your Honor. And if you got your Social Security, it would be $13,000 minus your Social Security, in effect. Well, the one I would, I would disagree with you there a little bit, Your Honor, because they're not cumulative in that way. No, I understand. I mean, it's 3 and 10. Exactly. So each one would say you can get up to $10,000 here minus Social Security, and this one says you can get up to $3,000 here minus your Social Security. They're not lumped together. They're separate companies. They're separate plans. They have separate, completely separate duties to Mr. Rainfro. Okay. If there are no other questions, I will go ahead and sit down. Thank you, Your Honor. You have some time, Mr. Green. Okay. A couple of things to point out. Number one, the point that Your Honor made when counsel for the plans stepped up was very telling. What counsel said was, your question was, once you've deducted it from one plan, how is it received under the other? And his response was, well, it is in the abstract. We're dealing actually in the real world here. And these policies don't play nicely together. Okay. There has to be something that we do to fashion a remedy here so that it's fair to everybody, so that Unum gets a deduction for the SSDI and Mr. Rainfro gets the benefits that he was promised under these policies. The other thing I expected to hear, if there was anything, was some reference in the record to show you what was going on for this 19 months that they were supposedly considering this issue. There's not one thing in the record for 19 months. Don't you wish they'd continued to deliberate for years and years and years, and your client could have gotten that money without any deduction whatsoever? I do. That would have been a much — that would have been a — I don't think you need to lament the long 19-month period. It's a great thing for your client. I know, but what — my point is that it was a done deal. It was a decided issue until somebody, some new eyes, got on this file and said, aha, here's something that we can do. We can save the company some money. And Unum, I think, in its letter indicated there had been an error. And because of that, they weren't going to ask your client to repay anything. There's some solace to them on that basis, right? They did. They did indicate that, yes. And lastly, this idea that somehow SSDI is factored into and the possibility of getting SSDI is factored into these policies. Well, it is factored in in a general way to these policies, but many people never even get SSDI. So the prediction of that and the idea that somehow that was factored into this, I think, is a bit of a stretch, particularly in this case. With respect, counsel, I did a lot of insurance underwriting kinds of issues over the years in practice, and that's all factored in, just like mortality tables are with life insurance policies. You don't know how long people are going to last. You just take probabilities, and that's what they do with these kinds of things as well, I suggest. I'm sure it is, and I respect your opinion on that as well, Your Honor. I just — my point there was only that there's nothing in this record that shows that it actually was. Let me ask you, what do you say about the argument that opposing counsel made about there being — if we do what you were saying and, say, find an equitable solution here, we would be in the position of reading the exact same language differently in two policies? I don't think you would be reading it differently in two policies. What you're doing is you're taking the two policies and you're saying, look, this wasn't anticipated. Okay? So we have to fashion some sort of a remedy. The parties didn't anticipate this. Unum didn't anticipate this. Funky Door, Service Master, Mr. Rampham, nobody anticipated that this kind of a situation would come up. So you're not interpreting them differently. What you're doing is you're overlaying an equitable resolution onto language that doesn't really fit this situation. Again, you get into that strange mental conundrum of, okay, once you've deducted it under — if you received it under one, you've deducted it, what is there to deduct? Well, that's a conundrum you can't get out of. And the only way to do it is to do something rational and reasonable like they did in those other insurance clauses and general liability policies. Apply it pro rata. You're asking us to marry the policies into one magically, like an iPad connection. It just kind of dissolves into a single policy, right? Not marry them. Look at the fact that they're both involved in one case, in one situation where there's Thank you very much. Thank you, Mr. Green. Thank you, Mr. Gill. The case just argued, Renfro v. Funke, Dorr, is submitted.
judges: Rothstein, McKeown, Smith